UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF VIRGINIA
RICHMOND DIVISION



GEOFF RICHARD,

    Plaintiff,

v.

IVY GROUP INTERNATIONAL, INC. and
WILLIAM J. RIZZO,

    Defendant.

Action No. 3:10-CV-851

## MEMORANDUM OPINION

This matter comes before the Court on a Motion to Dismiss by Defendants Ivy Group International, Inc. ("Ivy Group"), and William J. Rizzo. For reasons explained below, the Court grants the Motion and dismisses this action for lack of personal jurisdiction.

### I. Statement of the Case

Richard, a Virginia resident, worked as an agent for Northwestern Mutual Life Insurance Company ("Northwestern") between 1988 and 2007. During that period, Northwestern acquired a controlling interest in The Frank Russell Company ("Frank Russell"), a Washington-based financial services and asset management company. After Northwestern acquired Frank Russell, Richard began participating in Frank Russell's referral fee program. Under the terms of that program, if Richard obtained an institutional account for Frank Russell, Frank Russell paid Richard a quarterly referral fee on any new client's assets under management. As a condition of receiving those fees, Richard had to be affiliated with a firm, like Northwestern, licensed to provide institutional referrals to Frank Russell.

1

Frank Russell employed Rizzo, a Pennsylvania resident, as a sales representative during this period. Soon after Northwestern acquired Frank Russell, Richard met Rizzo. Rizzo and Richard began working alongside one another and secured over $150 million in institutional money for Frank Russell to manage. Rizzo travelled to Virginia on numerous occasions between 2001 and 2003, as Rizzo and Richard collaborated to bring institutional clients to Frank Russell.

In 1994 Rizzo formed Ivy Group, a Delaware corporation, in order to give advice and collect fees on the management of assets held in an unnamed charitable remainder trust. While Rizzo remained employed with Frank Russell, he put together a contract between Ivy Group and Frank Russell that enabled Ivy Group to receive referral fees from Frank Russell under the referral fee program. Rizzo left Frank Russell shortly after engineering that deal.

Richard left Northwestern in March 2007. In order to continue receiving Frank Russell referral fees, Richard had to become affiliated with a different firm licensed to provide institutional referrals to Frank Russell. Ivy Group was licensed to receive those fees. So Richard instructed Frank Russell to redirect his referral fees to Ivy Group. Under this arrangement, Ivy Group would receive a twenty percent fee on payments to Richard and pass along the remaining eighty percent to Richard. Ivy Group began conveying quarterly payments to Richard.

The arrangement worked well until late 2008. In December of that year, Ivy Group's payments to Richard decreased by half, for which Ivy Group allegedly provided no explanation. The payments also stopped arriving at the customary times. Ivy Group only made the quarterly payments after Richard made numerous attempts to contact Rizzo. According to Richard, Rizzo told Richard that Frank Russell had made its third-quarter payment for 2010 to Ivy Group, but Ivy Group failed to pass along Richard's share of the payment. Ivy Group asserts that the cessation of payments tracked the terms of the deal between Richard and Ivy Group. According

2

to Daniel Houghton, president of Ivy Group, Ivy Group and Richard agreed Richard would receive twelve quarterly payments, and Ivy Group made all twelve payments.

Richard sought an accounting of Frank Russell's quarterly payments to Ivy Group. After much urging, Rizzo handed over Ivy Group's 1099 Forms from 2007, 2008, and 2009, but Richard doubts that these forms accurately represent the amounts Ivy Group received from Frank Russell. Richard's attorney demanded an accounting of Frank Russell's payments to Ivy Group by letter, but Ivy Group refused the request. The refusal led Richard to sue Ivy Group and Rizzo (collectively "the Defendants") in state court, asserting claims for breach of a partnership agreement, breach of contract, and breach of fiduciary duty. The Defendants removed to federal court and moved to dismiss.

II. Waiver

Richard contends the Defendants' Motion was untimely filed. When a defendant removes a case, "the federal court takes the case up where the State court left it off," treating the events that took place in state court as if they occurred in federal court. *Granny Goose Foods, Inc. v. Teamsters*, 415 U.S. 423, 436 (1974). *See Mobil Oil Co. de Venezuela v. Jimenez*, 948 F.2d 1282, at *2 (Nov. 15, 1991) (unpublished table decision). This rule requires a court to assess whether a defendant properly objected to personal jurisdiction before the case's removal. *Id.* Virginia adheres to the general appearance doctrine, whereby a defendant who appears before the court to contest any matter other than service of process or personal jurisdiction waives those objections. *Lyren v. Ohr*, 271 Va. 155, 623 S.E.2d 883, 884-85 (Va. 2006). In federal court, the distinction between a special and general appearance has been abolished; a party may join his challenge to personal jurisdiction with other bases for dismissal. Fed. R. Civ.

P. 12(h); *Guthrie v. Flanagan*, 2007 WL 4224722, at *3 (E.D. Va. Nov. 27, 2007). Nonetheless, a party waives his challenge to personal jurisdiction if he fails to raise it within the prescribed time period or if the party's "conduct in litigation demonstrates consent to a court's jurisdiction, even where [the] party has made a timely objection." *Guthrie*, 2007 WL 4224722, at *3.

On November 22, 2010, Ivy Group and Rizzo filed a special appearance objecting to personal jurisdiction in state court. Richard contends this objection failed to preserve the issue in this Court. The Court disagrees. The Defendants put the Court and Richard on notice of their belief that this Court lacked jurisdiction when they filed their objection in state court. The Defendants' special appearance was valid under Virginia law, which applied to this action prior to removal. Other courts have similarly concluded that a party preserves his objection to personal jurisdiction when he lodges a motion in state court, a position with which this Court agrees. *See Nationwide Bi-Weekly Admin., Inc. v. Belo Corp.*, 512 F.3d 137, 141 (5th Cir. 2007); *Morgan v. Wal-Mart Stores East, LP*, 2010 WL 4394096, at *2 (E.D. Va. Nov. 1, 2010).

Richard also contends the Defendants' post-removal conduct demonstrates consent to the Court's jurisdiction. The Defendants objected to personal jurisdiction in state court and removed this case on the same day. The Defendants did not file a motion to dismiss within seven days of removal; rather, they waited until February 14, 2010, to formally advise this Court of their objection. *See* Fed. R. Civ. P. 81(c)(2)(C). Since removing the case, the Defendants have participated in some facets of this case—attending pretrial conference, moving to quash certain subpoenas, responding to a motion to compel, and serving discovery—all the while resisting formal engagement in the merits of the action until the Court decided whether it had jurisdiction over the Defendants. Nonetheless, Richard argues the Defendants consented to the Court's jurisdiction by taking these steps.

The Court disagrees. None of the Defendants' "defense moves" have "implicate[d] the merits" of Richard's claims. *Xyrous Communs., LLC v. Bulgarian Telecomms. Co. AD*, 2009 WL 2877084, at *9 (E.D. Va. Sept. 4, 2009). For example, counsel for the Defendants attended pretrial conference because he was ordered to do so, not because he sought to address the merits of Richard's claims. Also, the Defendants have consistently resisted engaging in discovery until the Court decides whether it has jurisdiction over them. The Defendants have participated in this litigation in nominal ways, none of which are aimed at defending on the merits of Richard's claims.

III. Personal Jurisdiction

The Defendants contend this Court lacks specific jurisdiction over them with regard to any dispute arising from Richard's referral fee payments. Upon a challenge to a court's personal jurisdiction, the parties raise a question of fact for the judge, to be decided by a preponderance of the evidence. *Mylan Labs., Inc. v. Akzo, N.V.*, 2 F.3d 56, 59-60 (4th Cir. 1993). *See* Fed. R. Civ. P. 12(b)(2). The plaintiff carries the burden of proof. *Mylan Labs.*, 2 F.3d at 59-60. The court must draw all reasonable fact inferences in the plaintiff's favor. *Id.*

The court must first determine whether the forum state's long-arm statute permits jurisdiction. *Peanut Corp. of Am. v. Hollywood Brands, Inc.*, 696 F.2d 311, 313 (4th Cir. 1982). The Virginia long-arm statute permits a court to assert personal jurisdiction over a claim "arising from the person's":

> (1) Transacting any business in this Commonwealth;
> (2) Contracting to supply services . . . in this Commonwealth; [or]
> (4) Causing tortious injury in this Commonwealth by an act or omission outside
> this Commonwealth if he regularly does or solicits business, or engages in any other
> persistent course of conduct, or derives substantial revenue from goods used or consumed
> or services rendered, in this Commonwealth[.]

5

Va. Code § 8.01-328.1 (2009). Virginia's long-arm statute extends to the boundaries of personal jurisdiction as widely as the Due Process Clause of the Fourteenth Amendment allows. *New Wellington Fin. Corp. v. Flagship Resort Dev. Corp.*, 416 F.3d 290, 294 (4th Cir. 2005).

The parties mainly argue over whether Rizzo and Ivy Group "transact[ed] any business in this Commonwealth[.]" Va. Code § 8.01-328.1(A)(1). Virginia is a "single act" state, such that a single act of transacting business can permit a court to exercise personal jurisdiction. *D'Addario v. Geller*, 264 F.Supp.2d 367, 379 (E.D. Va. 2003). However, not just any single act will satisfy § 8.01-328.1(A)(1). Rather, a single act must be sufficiently significant to supply a basis for the court's jurisdiction. According to another court in this district,

> the pertinent factors for assessing whether a defendant has transacted business in the forum are (i) where any contracting occurred, and where the negotiations took place, (ii) who initiated the contact, (iii) the extent of the communications, both telephonic and written, between the parties, and (iv) where the obligations of the parties under the contract were to be performed.

*Affinity Memory & Micro, Inc. v. K & Q Enterprises, Inc.*, 20 F.Supp.2d 948, 952-53 (E.D. Va. 1998). That court concluded that the sale of computer equipment by a Minnesota defendant to a Virginia resident was not significant enough to satisfy § 8.01-328.1(A)(1), where the Virginia resident initiated the transaction and the defendant performed its obligation under the contract outside Virginia. *Affinity Memory & Micro, Inc.*, 20 F.Supp.2d at 952.

The Court concludes Richard has not carried his burden of demonstrating that either defendant transacted business in Virginia. With respect to Rizzo, Richard first contends that the numerous trips Rizzo made to Virginia, during which he sought institutional clients for Frank Russell, supply jurisdiction. The Court disagrees. These trips ended in 2003, years before Richard diverted his referral fees to Ivy Group, and had nothing to do with that arrangement. As far as the Court can tell, Rizzo never travelled to Virginia in relation to the present dispute.

6

Richard also argues Rizzo initiated discussions with Richard as Ivy Group's representative, which ended with Richard diverting his referral fees to Ivy Group. Richard has produced very little evidence to this effect. Richard asserted that the referral fee arrangement was the product of telephone and electronic communications between Rizzo and Richard while the latter resided in Virginia. Since Rizzo contested that point, the assertion itself is insufficient to satisfy Richard's burden. Richard also provided the Court no official phone records, e-mails, or text messages from which the Court could conclude that Rizzo sought business in Virginia. Richard did produce a purported record prepared for litigation tabulating the phone conversations between Richard and Rizzo between 2007 and 2010, but the Court assigns this record little weight. The record does not detail how many, if any, of those phone calls Rizzo initiated, or how many, if any, of those calls he made to Virginia.

The most probative evidence of Rizzo's relationship to the forum Richard produced was a check representing Richard's portion of one quarterly referral fee payment. The check was issued by Ivy Group and drawn from a bank branch addressed near Rizzo's hometown in Pennsylvania. The check bears the signature of Rizzo's wife. Even if the Court infers from the signature that Rizzo himself was responsible for writing and sending the check, a single check Rizzo sent to Richard from outside Virginia does not provide a basis for concluding that Rizzo reached into Virginia to transact business with Richard. On its face, the check equally supports the contentions that Rizzo sought out business in Virginia and that Richard sought out Rizzo's services in setting up the referral fee arrangement. Jurisdiction would be improper under Virginia law if the latter contention were true, since a defendant does not transact business in Virginia simply because the performance of his obligation under a contract has some incidental effect in the state.

Richard urges upon the Court an analogy between this case and *Peanut Corp. of America v. Hollywood Brands, Inc.* 696 F.2d 311 (4th Cir. 1982). The dearth of evidence of Rizzo's willing interaction with this forum makes that analogy inapt. In *Peanut Corp.*, the Fourth Circuit concluded a transaction satisfied § 8.01-328.1(A)(1) when the defendant sent a modification letter related to a disputed contract to the Virginia plaintiff, engaged in several telephone conversations with the plaintiff, and sent "numerous written communiqués" to Virginia. 696 F.2d at 314. If the Court could verify Richard's claims about the extent of Rizzo's contacts with Richard in Virginia, then it might agree to the analogy between this case and *Peanut Corp.* Richard, however, has provided the Court with little more than innuendo regarding where he and Rizzo formed the referral fee arrangement, where their negotiations took place, and the extent of the negotiations leading to the arrangement. *See Affinity Memory & Micro, Inc.*, 20 F.Supp.2d at 952. Though the Court is bound to draw all reasonable inferences in Rizzo's favor, it cannot make reasonable inferences without evidence from which to draw them.

The Court also concludes it lacks jurisdiction over Ivy Group under § 8.01-328.1(A)(1). Richard first argues that Rizzo controls Ivy Group and that the Court should assert jurisdiction over Ivy Group on that basis. If Richard had proven that Rizzo controlled Ivy Group and that the Court has jurisdiction over Rizzo, then this proposition would be sound. However, Richard has not proven the first proposition[1] and, as the Court has explained, neither has he proven the second.

Richard also argues that the Court has jurisdiction over Ivy Group because Ivy Group

---

[1] The parties tell different stories about Rizzo's connection to Ivy Group after 2000. According to Richard, Rizzo is "the principal driving force behind Ivy [Group]." (Richard Decl. ¶ 10, Pl.'s Mem. in Opp'n Ex. 1, Docket No. 16.) For his part, Rizzo states that he has a "good relationship with Houghton," but he has "no . . . control, financially or otherwise," over Ivy Group. (Rizzo Decl. ¶¶ 6(A), 7(E), Def.'s Mem. in Supp. Ex. 1, Docket No. 8.) He contends Richard received payments from Ivy Group bearing Rizzo's signature because "[w]hile [Rizzo] was at Ivy [Group], a stamp with [his] signature was created and was continued to be used by the bookkeeper to sign (stamp) checks after [he] left the company." (Rizzo Decl. ¶ 6(B).) Rizzo says he "was not aware of this until just recently." (Rizzo Decl. ¶ 6(B).)

paid out Richard's portion of his referral fees in Virginia. The Court rejects this argument. If Ivy Group did nothing more than mail several checks from Delaware or Pennsylvania to Richard in Virginia, then those acts would not demonstrate a "purposeful effort to transact business in the forum state." *DeSantis v. Hafner Creations, Inc.*, 949 F.Supp. 419, 425 (E.D. Va. 1996). Richard has not proven that Ivy Group did anything more than that. *See Affinity Memory & Micro*, 20 F.Supp.2d at 953 (casting doubt on the court's jurisdiction over a defendant who shipped a product to the forum state but surrendered title before shipping the product). For this reason, this case is distinguishable from *English & Smith v. Metzger*, a case Richard contends is similar to this one. 901 F.2d 36 (4th Cir. 1990). There, the Fourth Circuit concluded a California attorney transacted business in Virginia when he sought out a Virginia attorney to serve as co-counsel in a California proceeding. 901 F.2d at 39. The panel thought it was significant that the California attorney knew the plaintiff would fulfill his obligations under the contract in Virginia. *Id.* In *English & Smith*, the plaintiff helped defend a civil forfeiture lawsuit, performing all of his work in Virginia. *Id.* at 37. Here, based on the record before the Court, it appears that Ivy Group remitted payment outside Virginia, which Richard received inside Virginia. The Court simply lacks an evidentiary basis for concluding the payments resulted from Ivy Group's attempt to transact business in this forum.

Richard argues the Court has jurisdiction over Rizzo and Ivy Group based on two other provisions of Virginia's long-arm statute. First, Virginia Code § 8.01-328.1(A)(2) allows a court to exercise jurisdiction over any party "[c]ontracting to supply services" in Virginia. In order for § 8.01-328.1(A)(2) to confer jurisdiction on this Court, the Court must conclude that the Defendants made a contract with Richard in Virginia or contracted to perform obligations to Richard here. *See Promotions, Ltd. v. Brooklyn Bridge Centennial Comm.*, 763 F.2d 173, 175

9

(4th Cir. 1985). For reasons the Court explained above, Richard has not carried his burden of proving that Ivy Group or Rizzo made a contract with Richard in Virginia or performed obligations in this state.

Second, Richard contends jurisdiction is proper under Virginia Code § 8.01-328.1(A)(4). That provision allows a Virginia court to assert jurisdiction over a defendant who, "by an act or omission outside this Commonwealth," causes tortious injury to a plaintiff in Virginia, "if [the defendant] (1) regularly does or solicits business, or (2) engages in any other persistent course of conduct, or (3) derives substantial revenue from goods used or consumed or services rendered" in Virginia. Va. Code § 8.01-328.1(A)(4) (divisions added). Under § 8.01-328.1(A)(4), jurisdiction is proper if (1) the defendant commits an act outside Virginia causing tortious injury, and (2) a relationship exists between the Commonwealth and the defendant in any of the three forms mentioned in the provision. *Blue Ridge Bank v. Veribanc, Inc.*, 755 F.2d 371, 373 (4th Cir. 1985).

In order for the Defendants to satisfy the second requirement of § 8.01-328.1(A)(4), Richard must show that Ivy Group and Rizzo maintained a significant business presence in Virginia unrelated to the particular arrangement at issue in this case. *See, e.g., Taltwell, LLC v. Zonet USA Corp.*, 2007 WL 4562874, at *5 (E.D. Va. Dec. 20, 2007); *Jones v. Boto Co., Ltd.*, 498 F.Supp.2d 822, 827 (E.D. Va. 2007). For example, in *First American First, Inc. v. National Association of Bank Women*, the Fourth Circuit affirmed a district court's conclusion that a defendant satisfied the second requirement of § 8.01-328.1(A)(4). 802 F.2d 1511, 1514 (4th Cir. 1986). The district court had found that the non-profit organization sent bi-monthly journals and annual national directories to over one thousand Virginia members, along with annual operating manuals to local affiliates. *Id.* Based on those findings, the Fourth Circuit concluded the

defendant had engaged in a persistent course of conduct in Virginia. *Id.*

Here, Richard contends Ivy Group regularly conducted business in Virginia by sending Richard his referral fee payments for roughly three years. Richard argues Rizzo engaged in a persistent course of conduct in Virginia by making several trips to the state between 2000 and 2003 to carry on business for Frank Russell, communicating with Richard in Virginia between 2005 and 2007 about the fee arrangement, and paying Richard fees in Virginia beginning in 2007. Richard's arguments are based on a misunderstanding of § 8.01-328.1(A)(4). Both arguments disregard the fact that a defendant must maintain a presence in Virginia unrelated to the present controversy to satisfy the second requirement of the statute. *See Taltwell*, 2007 WL 4562874, at *5. Richard contends Rizzo and Ivy Group maintained presences in Virginia related to their referral fee arrangement with him. Hence, Richard has failed to make a showing required under § 8.01-328.1(A)(4).

Additionally, it is not clear Richard has alleged that Rizzo and Ivy Group committed a tort outside Virginia. Richard alleges Rizzo and Ivy Group breached a partnership agreement, a contract, and a fiduciary duty by failing to remit Richard's referral fee payments. Richard's first two claims sound in contract, making § 8.01-328.1(A)(4) facially inapplicable. His third, breach of fiduciary duty, can sound in tort in Virginia, but only if a plaintiff alleges the violation of a common law duty independent of the violation of a duty under the parties' contract. *Station #2, LLC v. Lynch*, 280 Va. 166, 171-72 (Va. 2010). The Complaint does not accuse Rizzo and Ivy Group of violating any duty that was not formed under the referral fee arrangement. Hence, Richard has not alleged the Defendants engaged in tortious activity outside Virginia, as § 8.01-328.1(A)(4) requires. *Blue Ridge Bank*, 755 F.2d at 373.

Though the Court need not reach the issue, jurisdiction over Rizzo and Ivy Group is also

improper under the Due Process Clause of the Fourteenth Amendment. A court can only assert jurisdiction over a defendant if the defendant has minimum contacts with the forum and jurisdiction does not offend "traditional notions of fair play and substantial justice." *Int'l Shoe Co. v. Washington*, 326 U.S. 310, 316 (1945); *Reynolds & Reynolds Holdings, Inc. v. Data Supplies, Inc.*, 301 F.Supp.2d 545, 549 (E.D. Va. 2004). A plaintiff must demonstrate that the non-resident defendant "purposefully availed" himself of the privileges of the forum's laws, so that the non-resident defendant has warning that his activities may subject him to litigation in the forum state. *Burger King Corp. v. Rudzewicz*, 471 U.S. 462, 474 (1985); *Hanson v. Denckla*, 357 U.S. 235, 253 (1958); *Peanut Corp.*, 696 F.2d at 314. A court also must conclude that the plaintiff's claims arise out of the activities by which he purposely availed himself of the laws of the forum. *Mitrano v. Hawes*, 377 F.3d 402, 407 (4th Cir. 2004) (citation omitted). In the context of a contract dispute between an in- and out-of-state party, the Supreme Court has instructed lower courts to consider "prior negotiations and contemplated future consequences, along with the terms of the contract and the parties' actual course of dealing[,]" in deciding whether the defendant established minimum contacts with the forum state. *Burger King*, 471 U.S. at 479.

Richard fails to demonstrate that Rizzo and Ivy Group established minimum contacts with Virginia. With respect to Rizzo, Richard's reliance on Rizzo's travels to Virginia through 2003 as a basis for the Court's jurisdiction is misplaced. Rizzo traveled to Virginia with the intent of gaining institutional investors for Frank Russell. Rizzo's work for Frank Russell is part of a different transaction from the one at the center of the parties' dispute. Richard grasps for more solid ground by saying that Rizzo's Frank Russell-related travels to Virginia led to Richard receiving referral fees from Frank Russell, the "mechanics" of which led to the arrangement

12

between Ivy Group, Rizzo, and Richard. (Def.'s Mem. in Opp'n 14, Docket No. 16.) This logical chain is too attenuated to permit the conclusion that Rizzo established minimum contacts with Virginia with respect to the referral fee arrangement.

With respect to Ivy Group, Richard again attempts to use the Court's supposed jurisdiction over Rizzo to bootstrap the case for the Court's jurisdiction over Ivy Group. Since the Court has concluded it lacks jurisdiction over Rizzo under the Fourteenth Amendment, the Court cannot assert jurisdiction over Ivy Group based on Rizzo's relationship with Ivy Group, whatever the nature of that relationship might be.

In support of his position, Richard offers *Cancun Adventure Tours, Inc. v. Underwater Designer Co.*, in which a Fourth Circuit panel concluded a vendor purposefully availed itself to Virginia by selling an air compressor to a Virginia resident. 862 F.2d 1044, 1046-47 (4th Cir. 1988). The vendor advertised the air compressor in a national magazine, which the panel concluded was insufficient, on its own, to confer the district court with jurisdiction. *Id.* at 1046. But the vendor "negotiated and undertook a contractual obligation with a Virginia resident," and after it sold the compressor, "continued to deal with [the buyer] in Virginia by telephone and through the mails." *Id.* On those basis, the court concluded jurisdiction was proper. *Id.* at 1047. *Cancun Adventure Tours* actually demonstrates the deficiency in Richard's evidence. If the case demonstrates the number of contacts that will permit the Court to assert jurisdiction under the Due Process Clause, then Richard has failed to reach that standard. As the Court explained in deciding jurisdiction over the Defendants was unjustified under Virginia law, Richard has not provided evidence to support his claim that Rizzo and Ivy Group reached into the forum state to create a business relationship with Richard.

Since the Court cannot assert jurisdiction over Rizzo or Ivy Group under either Virginia

or federal law, the Court grants the Defendants' Motion to Dismiss and dismisses this action.

Let the Clerk send a copy of this Memorandum Opinion to all counsel of record.

It is SO ORDERED.

/s/
James R. Spencer
Chief United States District Judge

ENTERED this 10th day of May 2011